IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MATTHEW YURISIC,** ) | |
|         **Plaintiff,** ) | |
|     v. ) | 2:08-cv-971 |
| ) | |
| **EDWARD CARTER, JR., individually and** ) | |
| as a Police Officer for the Borough of ) | |
| Greenville, ) | |
|         **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

Presently before the Court is DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by police officer Edward Carter, Jr. *(Document Nos. 19 and 20)*. Defendant also filed a Concise Statement of Material Facts with supporting exhibits *(Document No. 21)*. Plaintiff, Matthew Yurisic, has filed a brief in opposition, a responsive concise statement of material facts and several exhibits (*Document Nos. 27 and 28*). The Court notes that Defendant attached only a few brief excerpts from Mr. Yurisic's deposition, while Plaintiff has provided the entire transcript.

The issues have been fully briefed and the motion is ripe for disposition. After a careful consideration of the motion, the filings in support and opposition thereto, the relevant case law, and the record as a whole, the Court concludes that the motion for summary judgment will be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

In resolving a motion for summary judgment, a court must draw all reasonable inferences in favor of the non-moving party. Similarly, the first step in evaluating a claim of

qualified immunity is to "determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002). Accordingly, where the underlying facts are disputed, the factual background will be based upon the events as set forth in Plaintiff's Responsive Concise Statement of Material Facts.

The incident which gave rise to this lawsuit occurred on May 12, 2007 at approximately 8:00 a.m. Yurisic was 85 years old at the time of the incident. There had been a recent water main break on Water Street in the Borough of Greenville, Pennsylvania, although the street was not yet barricaded to traffic. Yurisic drove his truck through a puddle and into an unexpected sinkhole that had formed as a result of the water main break. Several employees from the Greenville Borough Water Department arrived on the scene and determined that it was necessary to remove Yurisic's vehicle from the sinkhole, as water was pouring out and the situation was becoming increasingly dangerous. It was also necessary for Yurisic to move away from the area. Officer Carter also arrived on the scene. The police station is located approximately 20-30 feet from the location of the sinkhole.

The parties' respective versions of events differ substantially. Carter, in essence, avers as follows: he offered to help Yurisic and asked him several times to exit his vehicle; Yurisic rejected his offers of assistance, refused to exit the vehicle, became belligerent, used obscene language, grabbed the officer's wrist, and struck the officer in the abdomen; Carter then used the minimum amount of force necessary to remove Yurisic from the truck, for his own safety, and escort him to the police station. Yurisic was detained for 10-20 minutes to obtain his identification and issue a citation for disorderly conduct. Thereafter, Carter offered to drive Yurisic to the hospital and when he refused, personally drove Yurisic home. En route, Carter

informed Yurisic's son, Michael, of the incident and expressed concern. The charge against Yurisic was voluntarily dismissed.

Yurisic disputes important aspects of this account. Yurisic testified in his deposition that by the time Officer Carter arrived, he had already exited the truck, walked out of the puddle onto dry pavement, and was trying to call his son, Rick, to tow his truck. Yurisic also contends that Carter did not offer to help him, but rather, demanded that his vehicle be immediately removed or it would be towed. Plaintiff objected to paying for a tow truck because his son, whose business was located directly across the street, could tow it for free. Yurisic testified that he obeyed Officer Carter's order to not re-enter the truck, and merely leaned through the door to retrieve his cell phone and eye drops. Without warning, according to Plaintiff, Officer Carter stated "I'm tired of fussing with you. . .I am going to give you a citation" and grabbed him from behind and removed him by force to the police station, using a knee in his back. Yurisic testified that he asked Carter to "let go" because Carter was aggravating his rheumatoid arthritis. Yurisic claims that while in the police station, he pleaded to stand up to relieve his back pain, but Carter directed him to remain seated or he would be put in jail. Plaintiff attached photographs which depict extensive bruising on his left forearm and hand and stated that he was bed-ridden for two days after the incident. Yurisic denies having ever used vulgar language or having struck the police officer.

There are several other disputed questions of fact. Carter testified that he put handcuffs on Yurisic when they reached the sidewalk, while Yurisic does not recall ever being handcuffed. Carter testified that he informed Yurisic that he was being arrested for disorderly conduct while en route to the police station, while Yurisic claims that Carter flipped through a

book after they reached the station to determine the charge. Carter testified that he offered to take Yurisic to the hospital for medical attention, while Yurisic claims that it was for a blood alcohol test and that Officer Carter changed his mind only after a phone call with Michael Yurisic, who convinced the officer that Plaintiff had not consumed alcohol for nearly twenty years.

In the Complaint, Yurisic asserted claims under Section 1983 for violation of his First, Fourth and Fourteenth Amendment rights and also asserted numerous supplemental state law claims. Defendant has moved for summary judgment on all claims. In his brief in opposition to the summary judgment motion, Plaintiff explained that he has decided to narrow his claims, and is now asserting only Fourth Amendment claims for unlawful arrest and the use of excessive force. Accordingly, Defendant's motion as to all other claims will be **GRANTED** as unopposed.

### STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id*. (*citing Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 325 (1986)).  Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

### DISCUSSION

Section 1983, 42 U.S.C. § 1983, does not create substantive rights, but rather provides a remedy for the violation of civil rights created by federal law.  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).  A *prima facie* case under § 1983 requires a plaintiff to demonstrate:  (1) that the alleged wrongful conduct was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000).  It is undisputed that Defendant Carter was a state actor.

> The Fourth Amendment to the United States Constitution states:
>
> **The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.**

In the instant case, Yurisic alleges that Officer Carter violated his Fourth Amendment rights in that he was arrested without probable cause and/or with use of excessive force in conducting the arrest.  The Court addresses those issues seriatim.

Unlawful Arrest Claim

The Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause. *Rogers v. Powell*, 120 F.3d 446, 452 (3d Cir. 1997). There is no dispute that Yurisic was arrested. The only issue is whether Carter had probable cause to arrest Yurisic for disorderly conduct. The existence of probable cause is based on the totality of the circumstances known to the officer at the time, *id.* at 453, and is typically a question of fact. *Wilson v. Russo*, 212 F.3d 781, 796 (3d Cir. 2000).

The Pennsylvania Disorderly Conduct statute states: "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or in violent or tumultuous behavior; (2) makes unreasonable noise, (3) uses obscene language, or makes an obscene gesture, or (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 18 Pa. C.S.A. § 5503.

Viewing the record in the light most favorable to Plaintiff, Carter's motion for summary judgment must be denied. *See, e.g., Wagner v. Riverside Township*, 2007 WL 4226069 (D.N.J. 2007) (involving similar incident). Under Yurisic's version of the facts, Carter improperly arrested and charged him, without warning. Yurisic did not create the dangerous condition, but rather, was an unwitting victim of the water main break and resultant sinkhole. Yurisic attempted to call his son to remove the truck. Yurisic testified that he had already exited the vehicle and merely leaned into the truck to retrieve his cell phone and eye drops. Yurisic denies the use of any violence or profanity and claims that he did not disobey any directive from

the officer.[1]  The charge of disorderly conduct was subsequently dismissed.  In sum, a reasonable jury could find that Officer Carter did not have probable cause to arrest Yurisic for disorderly conduct.

Even assuming, arguendo, that Carter lacked probable cause, the Court must nevertheless consider whether he is entitled to qualified immunity.  In *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009), the United States Supreme Court explained:

> The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.

The record must be viewed in the light most favorable to Yurisic in considering Officer Carter's defense of qualified immunity.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (explaining that a "genuine" issue of fact did not exist in that case because the incident was captured on videotape). It would have been abundantly clear to a reasonable police officer that he could not constitutionally arrest an unwitting victim of a road condition merely because the officer was "tired of fussing with [him]."  The factual situation in *Kist v. Fatula*, 2009 WL 506863 (W.D. Pa. 2009) (Gibson, J.), is distinguishable in that the arrestee in that case was not involved in the accident, but drove up later, parked in a live traffic lane, blocked traffic, and became involved in a confrontation with a police office that disrupted the scene – and for which the arrestee pled guilty.

---

[1]After a careful review of the statements made by the three water department employees, the Court concludes that genuine issues of material fact remain.  Defendant erroneously fails to construe the record in the light most favorable to the non-moving party.

Moreover, even if Yurisic was verbally combative, the law is clear that impolite speech to a police officer does not constitute disorderly conduct, such that Carter is not entitled to qualified immunity. *City of Houston v. Hill*, 482 U.S. 451(1987); *Commonwealth v. Hock*, 728 A.2d 943, 947 (Pa. 1999). Accordingly, Carter is not entitled to qualified immunity on this claim.

Excessive Force Claim

Seizures conducted in a manner that is unusually harmful to an individual's privacy or physical interests may be unreasonable under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Whren v. United States*, 517 U.S. 806, 817 (1996). The test is whether, under the totality of the circumstances, "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Graham*, 490 U.S. at 397. Factors to be considered include:

> the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight, as well as the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time . . . .

*Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003) (citations omitted). The reasonableness of the action must be judged from the perspective of a reasonable officer on the scene and not with 20/20 hindsight. *Id.* Factual questions regarding whether the claimed use of force was reasonable should frequently remain a question for the jury. *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004) (citations omitted).

It appears that there are two specific allegations of excessive force: (1) the manner in which Carter grabbed Yurisic from behind and propelled him up the street to the police station, despite his protestations regarding his arthritis;[2] and (2) the refusal to let him stand, while at the station, to relieve his back pain. The Court recognizes that both of these allegations are rather minimal compared to the amount of force condoned in other cases. *Compare, e.g., Sharrar v. Felsing*, 128 F.3d 810 (3d Cir. 1997) (large SWAT team, with machine guns, which forced suspects to lie face down in dirt under threat that officers would "blow [their] fucking heads off" held not excessive under the circumstances). However, the situation confronting Officer Carter, and the necessity for him to exert force, was correspondingly minimal, as this incident involved a single, unarmed, arthritic, 85-year-old man whose vehicle had blundered into a sinkhole. Thus, a jury considering all of the circumstances could reasonably conclude that the force used – even if rather minimal – was nevertheless excessive. Similarly, taking Yurisic's version of the events as true, Defendant is not entitled to summary judgment on the basis of qualified immunity.

## Conclusion

Due to the existence of numerous genuine issues of material fact, this case must be presented to a jury to determine whether Yurisic's Fourth Amendment rights were violated. To make credibility and factual determinations, weigh evidence, and draw legitimate inferences from the facts are all within the purview of a jury. At trial, Officer Carter will have a full opportunity to convince the jury that his version of events is accurate and that he had probable cause to believe

---

[2]The Court will not recognize a claim based on the alleged misuse of handcuffs because Yurisic testified that he was never handcuffed. *See* Responsive Concise Statement ¶ 15.

that Yurisic committed disorderly conduct and that his use of force was reasonable under the circumstances.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MATTHEW YURISIC,** ) | |
|     **Plaintiff,** ) | |
|   v. ) | 2:08-cv-971 |
| ) | |
| **EDWARD CARTER, JR., individually and** ) | |
| **as a Police Officer for the Borough of** ) | |
| **Greenville,** ) | |
|     **Defendant.** ) | |

**ORDER OF COURT**

In accordance with the foregoing memorandum opinion, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Document No. 19) is hereby **GRANTED IN PART AND DENIED IN PART**. Summary judgment is DENIED as to Plaintiff's claims for unlawful arrest and excessive force, and summary judgment is GRANTED as to all other claims.

Plaintiff shall file a Pretrial Statement on or before January 12, 2010. Defendant Carter shall file a Pretrial Statement on or before February 2, 2010. A Pretrial Conference is scheduled on February 5, 2010 at 9:30 A.M. before the undersigned.

SO ORDERED this 22nd day of December, 2009.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: Robert Varsek, Esquire
Email: rrb@csonline.net

Mark Hamilton, Esquire
Email: mhamilton@c-wlaw.com

Philip Sbrolla, Esquire
Email: psbrolla@c-wlaw.com